**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SYREETA FLOYD,** *Plaintiff,* | : | **CIVIL ACTION** |
| **v.** | : | |
| **CITY OF PHILADELPHIA (Dept. of Prisons),** *Defendant.* | : | **No. 26-cv-3359** |

# MEMORANDUM

**KENNEY, J.** **SEPTEMBER 30, 2026**

On May 15, 2026, Plaintiff Syreeta Floyd initiated this action against her former employer, the City of Philadelphia (Philadelphia Department of Prisons), asserting claims for sexual harassment, sex discrimination, and retaliation in violation of federal, state, and local statutes, including Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). *See* ECF No. 1. Defendant filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Defendant's Motion") on June 30, 2026. *See* ECF No. 9. Plaintiff opposes dismissal. *See* ECF No. 10. For the reasons set forth below, the Court will **GRANT** Defendant's Motion (ECF No. 9), and **DISMISS** Plaintiff's Complaint in its entirety **WITHOUT PREJUDICE**. Plaintiff is **GRANTED** leave to amend her Complaint.

## I. BACKGROUND

### A. Factual Background

Plaintiff began her employment as a Correctional Officer for the Philadelphia Department of Prisons around December 8, 2008. ECF No. 1 ¶¶ 2, 11. At the start of her career, Plaintiff worked at Curran-Fromhold Correctional Facility ("CFCF") in Philadelphia where Xavier Beaufort ("Beaufort") was "her commanding Captain" and Tabitha Baldwin Adams ("Adams")

was her "commanding Lieutenant." *Id.* ¶ 13. Soon after Plaintiff was assigned to CFCF, Adams made Plaintiff aware that "Beaufort 'wanted' Plaintiff." *Id.* ¶ 15. Plaintiff immediately "rejected Beaufort's advances" and, after doing so, she allegedly "was subjected to higher scrutiny for her performance than similarly situated officers[,]" even though she showed up to work on time and performed her job well. *Id.* ¶¶ 15–16. Plaintiff further alleges that, throughout this period of time, Adams "made pervasive sexually hostile statements" towards her at the prison and "created a pervasively sexually hostile work environment." *Id.* ¶ 17.

Several years later, in January 2014, Plaintiff filed a complaint for sexual harassment against Beaufort and Adams with Defendant's Office of Professional Compliance ("OPC") and with the EEO, which led to an interview of Plaintiff. *Id.* ¶ 18. However, Plaintiff alleges that the investigation "never concluded." *Id.* Plaintiff was later terminated in 2014—allegedly "as a result of the conduct of Beaufort"—but was then reinstated through the grievance process. *Id.* ¶ 19. After Plaintiff was reinstated, she requested a transfer to the overnight shift at CFCF because Adams and Beaufort did not supervise that shift; she was subsequently transferred. *Id.* ¶ 20. On March 25, 2019, Plaintiff was transferred to a different facility, Riverside Correctional Facility ("RCF"). *Id.* ¶ 21. Although she was no longer in the same facility as Beaufort, he allegedly "found additional occasions to harass and intimidate" her "as he moved up the ranks" of the prison system. *Id.* ¶ 22. In 2022, Plaintiff was suspended for ten days. *Id.* After appealing her suspension, it was reduced to a five-day suspension. *Id.*

In February 2024, Plaintiff was injured in a serious car accident, which led her to take an extended leave of absence. *Id.* ¶ 23. During her leave, a close friend of hers, Jamal Sanders, became incarcerated at CFCF. *Id.* ¶ 24. On November 21, 2024, while she was on leave, "Plaintiff

obtained power of attorney" to assist in managing Mr. Sanders' affairs. *Id.* ¶ 25. The power of attorney document "was notarized by Correctional Lieutenant Christine Reid." *Id.* ¶ 26.

On December 1, 2024, Plaintiff returned to work at RCF. *Id.* ¶ 27. On December 18, 2024, Sanders' defense attorney "submitted a request to Defendant[] requesting permission for Sanders to communicate with Plaintiff." *Id.* ¶ 28. On December 20, 2024, Plaintiff then "submitted notice of her relationship with Sanders," in accordance with General Order 63, and stated that she would like to be able to speak with him by phone. *Id.* ¶¶ 29, 33. Over the course of Sanders' incarceration, Plaintiff had several phone conversations with him, but never visited or interacted with him during her official duties. *Id.* ¶¶ 30–32.

Defendant opened an internal investigation against Plaintiff in January 2025 on the basis that "she had improper contact" and "a romantic relationship with an inmate." *Id.* ¶¶ 34–35. Plaintiff alleges that she admitted to communicating with Sanders over the phone, but had "notified her superiors of this[,]" and denied being in a romantic relationship with Sanders during the time that he was incarcerated. *Id.*

On February 6, 2025, Beaufort approached Plaintiff in an allegedly "harassing and intimidating manner" and asked her why she had parked in a handicapped space. *Id.* ¶ 36. Plaintiff explained that she had been in a car accident. *Id.* Beaufort responded by berating her and questioning how she could perform her official duties if she was injured. *Id.* Plaintiff proceeded "to cry and even peed herself" during this altercation. *Id.* Plaintiff reported Beaufort's conduct to the police and to the OPC. *Id.* ¶ 37. However, Plaintiff alleges that the OPC did not investigate her report. *Id.* ¶ 38.

On April 17, 2025, "Plaintiff was suspended with intent to terminate." *Id.* ¶ 5. The following month, on May 17, 2025, she "received formal notice of her termination" for the contact

that she had with Sanders. *Id.* ¶¶ 5, 40. Plaintiff alleges that "Beaufort was not to be involved in this decision making process for discipline relating to Plaintiff's contact with Sanders[,]" but Beaufort nonetheless still "participated in the decision to terminate Plaintiff." *Id.* ¶¶ 39–40.

**B. Procedural History**

After Plaintiff was terminated from her position, she filed a complaint with the EEOC on August 8, 2025, *see* ECF No. 9-1; ECF No. 10-1, and cross-filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"). *See* ECF No. 10-2; *see also* ECF No. 1 ¶ 6. On May 15, 2026, the EEOC issued a Notice of Right to Sue. *Id.* ¶ 7. That same day, Plaintiff filed a Complaint in the Eastern District of Pennsylvania asserting five causes of action for (1) sexual harassment in violation of Title VII (Count I); (2) sex discrimination in violation of Title VII (Count II); (3) retaliation in violation of Title VII (Count III); (4) violations of the PHRA (Count IV); and (5) violations of the PFPO (Count V). *See id.* ¶¶ 48–78. Plaintiff alleges that she sustained various damages, including lost wages, lost back pay, lost future wages, severe emotional distress, among other damages. *Id.* ¶ 45.

On June 30, 2026, Defendant moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. 9. First, Defendant argues that any claims based on conduct that occurred prior to October 2024 are time-barred and cannot be aggregated under the continuing violation doctrine. *Id.* at 10–11. Second, Defendant argues that Plaintiff failed to exhaust her administrative remedies for her hostile work environment claims because her EEOC Charge does not contain allegations of any "timely acts of sexual or gender based harassment." *Id.* at 11. Third, Defendant contends that Plaintiff failed to plead plausible Title VII, PHRA, and PFPO claims. *Id.* at 12–16. Regarding Plaintiff's hostile work environment claims, Defendant argues that the "sole timely incident[,]" which involved Beaufort berating Plaintiff for parking in a handicapped spot, "is not sex based and cannot support a hostile work environment claim." *Id.*

at 13. Regarding Plaintiff's sex discrimination claims, Defendant argues that Plaintiff did not plead any timely "sex based allegations[,]" nor are there sufficient "facts from which discrimination could reasonably be inferred." *Id.* Regarding Plaintiff's retaliation claims, Defendant contends that Plaintiff failed to plausibly plead causation because "the alleged protected activity"—her report to the police and the OPC—"occurred after the process leading to her termination had begun." *Id.* at 15 (emphasis omitted). Furthermore, Defendant reiterates that the alleged pre-2024 conduct is "too remote" and constitutes "an insufficient temporal nexus to establish causation." *Id.*

On July 13, 2026, Plaintiff filed an Opposition to Defendant's Motion to Dismiss (the "Opposition"). *See* ECF No. 10. In her Opposition, Plaintiff states that the "timely act" that all of her claims are based on "is the 2025 termination, and each count rests on that timely tangible employment action." *Id.* at 4. In addition, Plaintiff defends her inclusion of purported conduct that occurred prior to 2024. *Id.* at 5–6. Plaintiff explains that she did "not assert the 2008–2014 events as a chain of events leading up to [the] actionable charge period[,]" so the continuing violation doctrine is irrelevant. *Id.* at 5. Rather, she contends that this conduct "is pled as evidence explaining the motive for a new and timely termination decision." *Id.* According to Plaintiff, courts are allowed to consider "prior acts . . . 'as background evidence in support of a timely claim'" for an unlawful employment action. *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), [hereinafter *Morgan*]).

On August 12, 2026, Defendant filed a Reply in Support of its Motion to Dismiss (the "Reply"). *See* ECF No. 11. In its Reply, Defendant emphasizes that "discrete acts outside the filing period are not actionable," and *Morgan* does not countenance otherwise. *Id.* at 3. In addition, Defendant contends that Plaintiff's EEOC Charge demonstrates that the February 2025

incident was not "sexual or gender-based[,]" and there are "[n]o sexual comments, propositions, threats, innuendo, or gender-related conduct . . . anywhere in the Charge for the relevant period" to support her hostile work environment claims. *Id.* at 4. Furthermore, Defendant argues that Plaintiff's sex discrimination claims fail because Plaintiff did not sufficiently identify similarly situated comparators. *Id.* at 5. Finally, Defendant reiterates that Plaintiff's retaliation claims are not plausible because the internal investigation started before her alleged protected activity occurred. *Id.*

Defendant's Motion is fully briefed and before the Court.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion tests the sufficiency of a complaint. When evaluating a motion to dismiss for failure to state a claim, the Court must "accept all factual allegations as true, [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations and citation omitted). Conclusory allegations "are not entitled to the assumption of truth." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pleaded complaint must state a "plausible entitlement to relief[,]" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 559 (2007). While a plaintiff need not plead "detailed factual allegations," Federal Rule of Civil Procedure 8(a)(2) necessitates "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Put another way, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of the plaintiff's claims. *Connelly*, 809 F.3d at 789 (internal quotations and citation omitted); *see also Oxford*

*House, Inc. v. Twp. of N. Bergen*, 158 F.4th 486, 491 (3d Cir. 2025) ("At the motion to dismiss stage, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." (internal quotations and citation omitted)). The determination of facial plausibility is by nature "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87 (internal quotations and citation omitted).

When determining a Rule 12(b)(6) motion, district courts "must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1996 (3d Cir. 1993)). Courts may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (internal quotations and citation omitted).

## III. <u>DISCUSSION</u>

Defendant moved to dismiss Plaintiff's Complaint in its entirety pursuant to Rule 12(b)(6). *See* ECF No. 9. For the following reasons, the Court finds that Plaintiff failed to plead sufficient facts to raise a plausible entitlement to relief for her sexual harassment, sex discrimination, and retaliation claims under Title VII, the PHRA, and the PFPO. Accordingly, the Court will grant Defendant's Motion to Dismiss (ECF No. 9), and dismiss Plaintiff's Complaint without prejudice.

### A. Plaintiff Failed to Plausibly Allege Her Sexual Harassment Claims

First, Defendant moved to dismiss Plaintiff's Title VII, PHRA, and PFPO hostile work environment sexual harassment claims. *See* ECF No. 9 at 10–13; *see also* ECF No. 1 ¶¶ 48–59,

73–78. Defendant contends that the untimely pre-2024 conduct that Plaintiff alleges in her Complaint cannot be aggregated with the timely 2025 conduct pursuant to the continuing violation doctrine. ECF No. 9 at 10–11. In addition, Defendant argues that Plaintiff failed to plead any timely allegations of "sexual comments, innuendo, propositions, or sex-based harassment" in support of her hostile work environment claims, so those claims have not been administratively exhausted. *Id.* at 11–12. Defendant further contends that Plaintiff did not allege any timely conduct that reflects "severe or pervasive" intentional discrimination. *Id.* at 12.

Courts generally interpret claims brought under the PHRA and the PFPO under the same analytical framework as Title VII claims, so the Court will analyze Plaintiff's PHRA and PFPO claims in tandem with her Title VII claim. *See Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 213 (3d Cir. 2015); *see also Pan v. Temple Univ. Hosp., Inc.*, No. 24-2908, 2026 WL 27193, at *2 n.2 (3d Cir. Jan. 5, 2026). "Sexual harassment that creates a hostile work environment clearly violates Title VII." *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020). There are two types of actionable sexual harassment claims. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–66 (1986); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998), [hereinafter *Ellerth*]. First, there is "*quid pro quo*" sexual harassment, "which occurs where 'a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" *McClain v. Connellsville Sch. Dist.*, No. 20-cv-1485, 2021 WL 1737465, at *6 (W.D. Pa. May 3, 2021) (quoting *Ellerth*, 524 U.S. at 753). Second, there is "sexual harassment that creates a hostile work environment." *Id.* "Hostile work environment sexual harassment arises 'when unwelcome sexual misconduct has the purpose or effect of unreasonably interfering with a person['s] work performance or creating an intimidating, hostile, or offensive working environment.'" *O'Reilly v. Inst. for Cancer Rsch.*, No. 24-cv-5315, 2025 WL 1534969, at *6 (E.D.

Pa. May 29, 2025) (quoting *Ogilvie v. N. Valley EMS, Inc.*, No. 07-cv-485, 2008 WL 4761717, at *6 (E.D. Pa. Oct. 29, 2008)); *cf. Morgan*, 536 U.S. at 116 (explaining that a hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" (internal quotations and citation omitted)).

The Third Circuit has described the requirements of a *quid pro quo* sexual harassment claim as follows:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute *quid pro quo* sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment or (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual.

*Starnes*, 971 F.3d at 427 (citation omitted) (cleaned up); *see also Sousa v. Amazon.com, Inc.*, No. 22-3043, 2023 WL 7486751, at *4 (3d Cir. Nov. 13, 2023) (per curiam) ("Under a Title VII '*quid pro quo*' sexual harassment theory, a plaintiff must show that 'her response to unwelcome advances was subsequently used as a basis for a decision about compensation, [terms, conditions, or privileges o[f] employment].'" (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281–82 (3d Cir. 2000) (emphasis added))). When assessing "whether a causal connection exists between the rejection of the advances and the subsequent adverse decision, courts consider the behavior of the harassing individual, the timing of the adverse action, and inconsistences raised in the explanation for the adverse action." *Id.* (citing *Farrell*, 206 F.3d at 286).

By contrast, to plead a hostile work environment theory of sexual harassment under Title VII, a plaintiff must allege: "(1) she suffered intentional discrimination; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have

detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Starnes*, 971 F.3d at 428 (internal quotations and citation omitted) (cleaned up); *see also Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (same). When determining whether a hostile work environment claim is plausible, courts consider "all the circumstances," including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morgan*, 536 U.S. at 116 (internal quotations and citation omitted).

Before analyzing whether Plaintiff pleaded plausible sexual harassment claims, the Court first addresses Defendant's arguments regarding the timeliness and administrative exhaustion of Plaintiff's sexual harassment claims.

***1. Timeliness***

To bring a PHRA suit, a plaintiff must file a complaint with the PHRC "within 180 days of the alleged act of discrimination." *Perez v. RHP Staffing Co.*, No. 21-cv-1314, 2021 WL 4583850, at *6 (E.D. Pa. Oct. 6, 2021) (internal quotations and citation omitted); *see also* 43 Pa. Stat. § 959(h). In addition, to bring a Title VII suit, a plaintiff "must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing 42 U.S.C. § 2000e-5(e)(1)). The PFPO similarly provides for a 300-day filing period. *See O'Reilly*, 2025 WL 1534969, at *5; *see also* Phila. Code § 9-1112(1), (3). It is well-settled that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. A "discrete" act is an individually "actionable unlawful employment practice[,]" such as a "termination, failure to promote, denial of transfer, or refusal to hire." *Mandel*, 706 F.3d at 165 (internal quotations and citation omitted).

Here, Plaintiff alleges that she was unlawfully terminated on May 17, 2025. *See* ECF No. 1 ¶¶ 5, 41. A "termination" is a discrete, "actionable unlawful employment practice." *Mandel*, 706 F.3d at 165 (internal quotations and citation omitted). After she was terminated, Plaintiff filed a charge with the EEOC, and cross-filed it with the PHRC, on August 8, 2025, *see* ECF No. 1 ¶ 6; ECF No. 9-1; ECF No. 10-2, so her 300-day lookback period dates to around October 12, 2024, and her 180-day lookback period dates to around February 9, 2025. In her Opposition, Plaintiff does not dispute that only the alleged acts within these lookback periods are actionable. Indeed, Plaintiff emphasizes that her "suit is based on the wrongful termination." ECF No. 10 at 3 n.3; *see also id.* at 4 ("Plaintiff alleges the adverse action is her May 17, 2025 termination."); *id.* ("The timely act is the 2025 termination, and each count rests on that timely tangible employment action."). Since Plaintiff's May 17, 2025 termination falls within the relevant lookback periods from the time that she initiated her EEOC and PHRC complaints, her claims based on her May 17, 2025 termination are timely.

Notwithstanding the deadlines that the PHRA, PFPO, and Title VII set for filing charges of discrimination, "[u]nder the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel*, 706 F.3d at 165 (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). The continuing violation doctrine is generally considered a "narrow exception" to the statutory deadlines. *Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 540 (W.D. Pa. 2010) (internal quotations and citation omitted). To plead a hostile work environment claim that brings in nondiscrete acts that happened before the limitations period under the continuing violation doctrine, a plaintiff must demonstrate that "all acts which constitute the

claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165–66; *see also Morgan*, 536 U.S. at 122.

In its Motion, Defendant contends that Plaintiff's allegations of sexual harassment that occurred pre-October 2024 are time-barred and cannot be aggregated with the conduct that occurred in 2025 as "'one unlawful employment practice'" pursuant to the continuing violation doctrine. *See* ECF No. 9 at 10–11 (quoting *Morgan*, 536 U.S. at 118). According to Defendant, "[a]ll pre-2024 allegations must therefore be dismissed." *Id.* at 11. In her Opposition, Plaintiff states that she is *not* attempting to invoke the continuing violation doctrine to aggregate the alleged pre-2024 conduct with the events that occurred in 2025, and thus contends that Defendant's arguments concerning the continuing violation doctrine are "irrelevant." *See* ECF No. 10 at 5. Rather, Plaintiff explains that she permissibly alleged the pre-2024 conduct only "'as background evidence'" for "explaining the motive for a new and timely termination decision." *Id.* (quoting *Morgan*, 536 U.S. at 113); *see also id.* at 4 ("The timely act is the 2025 termination, and each count rests on that timely tangible employment action."). Since Plaintiff states that her sexual harassment claims are not based on an aggregation of the pre-2024 conduct and the February 2025 incident with her May 2025 termination, the Court need not decide whether those alleged acts "are part of the same unlawful employment practice" as her termination pursuant to the continuing violation doctrine. *Mandel*, 706 F.3d at 165–66. However, that does not mean that the pre-2024 factual allegations should be dismissed entirely, as Defendant argues. *See* ECF No. 9 at 11.

In *Morgan*, the Supreme Court found that Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim." 536 U.S. at 113. Accordingly, the Court concludes that Plaintiff is permitted to rely on the pre-2024 allegations only "as background evidence" in support of her timely sexual harassment claims, even if she is not

aggregating that conduct to form the basis of relief for her claims. *See Titus-Morris v. Banc of Am. Card Servicing Corp.*, 512 F. App'x 213, 217 (3d Cir. 2013) (per curiam) ("[B]ecause each of the alleged discriminatory acts occurred outside of the limitations period, they cannot in the aggregate form the basis for a hostile work environment claim. However, [plaintiff] may cite those discrete occurrences as background evidence in support of her timely claim"); *see also Patterson v. Strippoli*, 639 F. App'x 137, 141 n.8 (3d Cir. 2016) ("Although these earlier incidents do not provide a basis for relief, they may provide 'background evidence in support of' the [plaintiffs'] timely filed claims" (quoting *Morgan*, 536 U.S. at 113)); *Sorokina v. Coll. of N.J.*, No. 24-1365, 2025 WL 1289148, at *5 n.9 (3d Cir. May 5, 2025) (same), *cert. denied*, 146 S. Ct. 2158 (2026); *O'Reilly*, 2025 WL 1534969, at *5 ("[I]t is well established that [plaintiff's] allegations outside the 300-day lookback period may be considered as 'background evidence' in support of her claims." (quoting *Morgan*, 536 U.S. at 113) (collecting cases)).

***2. Administrative Exhaustion***

Next, the Court addresses administrative exhaustion. "A plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief" under Title VII, the PHRA, and the PFPO in federal court. *See Mandel*, 706 F.3d at 163 (internal quotations and citation omitted); *see also Tolliver v. Sch. Dist. of Phila.*, No. 24-cv-4140, 2025 WL 1797242, at *3 (E.D. Pa. June 30, 2025) (explaining that exhaustion is required for PHRA and PFPO claims). PHRA claims are barred if they are not first filed with the PHRC, *see Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997), which has jurisdiction over them "for one year after filing." *Huggins v. Coatesville Area Sch. Dist.*, 452 F. App'x 122, 126 (3d Cir. 2011). The PFPO contains a similar exhaustion procedure. *See Jones v. Foods on First III, Inc.*, 345 A.3d 231, 242 (Pa. Super. Ct. 2025). For Title VII claims, a plaintiff must first "file a charge of discrimination with the EEOC and procure a notice of the right to sue." *Mandel*, 706 F.3d at 163. Importantly, "[t]he parameters

of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the [EEOC]." *Id.* (internal quotations and citation omitted). The claims that a plaintiff pursues in district court "must thus fall 'fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.'" *Id.* (quoting *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996)); *see also Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 413–14 (3d Cir. 2010) ("The ensuing suit is limited to claims that are within the scope of the initial administrative charge."). Put another way, courts "assess the 'gravamen' of the administrative charge and determine whether the agency was 'put on notice' as to the unstated claim." *Tolliver*, 2025 WL 1797242, at *3 (quoting *Antol*, 82 F.3d at 1296).

While the Third Circuit has found that a plaintiff is "not necessarily preclude[d] . . . from asserting a claim for the mere failure to check a box on an EEOC Charge Form," a plaintiff cannot "greatly expand[] an investigation simply by alleging new and different facts when [s]he [is] contacted by the Commission following [her] charge." *Barzanty*, 361 F. App'x at 414 (internal quotations and citation omitted). These requirements are significant because the EEOC must "serve notice on the employer against whom the charges are made, [so] this standard also allows an employer to be put on notice of the claims likely to be filed against it." *Id.* (citing 42 U.S.C. §§ 2000e-5(b), (e)(1)). It also "afford[s] the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Antol*, 82 F.3d at 1296; *see also Rosetsky v. Nat'l Bd. of Med. Exam'rs of U.S., Inc.*, 350 F. App'x 698, 703 (3d Cir. 2009) (explaining that the PHRC "has exclusive jurisdiction over all cases involving a claim of discrimination for one year so that it may conduct an investigation and, if possible, resolve the matter").

Here, Plaintiff filed her claims for hostile work environment sexual harassment, sex discrimination, and wrongful discharge with the EEOC on August 8, 2025, and cross-filed those claims with the PHRC. *See* ECF No. 9-1; ECF No. 10-2.[1] The EEOC subsequently issued a Notice of Right to Sue on May 15, 2026. *See* ECF No. 1 ¶ 7. Plaintiff filed her Complaint in the Eastern District of Pennsylvania that same day, asserting claims under Title VII for hostile work environment sexual harassment, sex discrimination, and retaliation. *Id.* ¶¶ 48–78. Accordingly, Plaintiff took the appropriate steps to exhaust her federal claims based on her May 17, 2025 termination, and the Court will not dismiss them for failure to exhaust.[2]

---

[1] In its Motion, Defendant argues that Plaintiff's PFPO claims must be dismissed because she did not file them with the Philadelphia Commission on Human Relations ("PCHR"), and only allegedly cross-filed them with the PHRC. *See* ECF No. 9 at 16. According to Defendant, cross-filing PFPO claims with the PHRC does not suffice for purposes of exhaustion. *Id.*

Defendant ignores and fails to point out to the Court that the Superior Court of Pennsylvania recently found that "the PFPO does not require a complainant to file a complaint with the Philadelphia Commission prior to filing a suit in state court if a submission relating to the same conduct has been made with the PHRC." *Jones*, 345 A.3d at 242; *cf. Higgins v. MetLife Inc.*, 687 F. Supp. 3d 644, 650–56 (E.D. Pa. 2023). Other courts in this District have granted "deference to the *Jones* decision and [have] follow[ed] it" in federal court. *Jordan v. Nextus Billing Sols.*, 802 F. Supp. 3d 736, 739 (E.D. Pa. 2025); *see also Petrongola v. Rothman Nat'l Mgmt. Servs. Org., LLC*, Nos. 23-cv-734, 23-cv-861, 23-cv-1049, 23-cv-1553, 23-cv-1597, 2026 WL 182853, at *12 (E.D. Pa. Jan. 8, 2026), *report and recommendation adopted*, No. 23-cv-734, 2026 WL 174151 (E.D. Pa. Jan. 22, 2026); *Brown v. STC OpCo, LLC*, No. 25-cv-2859, 2025 WL 2735352, at *4 (E.D. Pa. Sept. 25, 2025).

Plaintiff has attached a letter to her Opposition, which lists a PHRC case number and indicates that she filed her claims with the PHRC. *See* ECF No. 10-2; *see also Mayer*, 605 F.3d at 230 (explaining that courts can consider "undisputedly authentic documents if the complainant's claims are based upon these documents"). Accordingly, the Court finds that Plaintiff's cross-filing of her PFPO claims with the PHRC is sufficient, and will not grant Defendant's Motion on that particular basis. *See Jordan*, 802 F. Supp. 3d at 739.

[2] In its Reply, Defendant reiterates that Plaintiff did not allege any "sexual comments, propositions, threats, innuendo, or gender-related conduct . . . for the relevant period[,]" and did not "identify any timely conduct meeting the 'severe or pervasive' standard required for a hostile work environment[,]" so "Plaintiff failed to exhaust a hostile work environment claim." ECF No. 11 at 4 (quoting *Mandel*, 706 F.3d at 167). This argument appears to be more pertinent to whether

However, although neither party raised the issue, the Court notes that Plaintiff failed to properly exhaust her PHRA and PFPO claims prior to filing her Complaint on May 15, 2026. As discussed above, the PHRC has exclusive jurisdiction over PHRA claims filed with it "for one year after filing." *Huggins*, 452 F. App'x at 126. "In turn, a complaint [filed] with the PHRC satisfies the exhaustion requirements of the PFPO." *Bines v. Williams*, No. 17-cv-4527, 2018 WL 4094957, at *5 (E.D. Pa. Aug. 27, 2018) (citing *Richards v. Foulke Assocs.*, 151 F. Supp. 2d 610, 616 (E.D. Pa. 2001)). According to the PHRC's November 25, 2025 letter, the "PHRC considers the complaint filed with [the] PHRC on the date the complaint is received by [the] EEOC." ECF No. 10-2. The PHRC thus had exclusive jurisdiction over Plaintiff's PHRC and PFPO claims for one year after August 8, 2025 (until August 8, 2026). Nevertheless, that period of exhaustion has since expired during the pendency of this litigation. When that occurs, several courts have applied a more flexible standard and have permitted PHRA and PFPO claims to proceed, rather than dismissing them "on a curable, technical defect." *Bines*, 2018 WL 4094957, at *5 (internal quotations and citation omitted)); *see also McCreary v. Adult World, Inc.*, 729 F. Supp. 3d 458, 467 n.5 (E.D. Pa. 2024) (explaining that there is "flexibility" for PHRA exhaustion in "instances where (1) 'the period of exhaustion expires during the pendency of litigation,' or (2) 'plaintiff files an amended complaint after the period of exhaustion'" (quoting *Eldridge v. Mun. of Norristown*, 828 F. Supp. 2d 746, 758 (E.D. Pa. 2011), *aff'd*, 514 F. App'x 187 (3d Cir. 2013)) (collecting cases)); *Rizzotto v. Quad Learning, Inc.*, No. 18-cv-4630, 2019 WL 2766588, at *3–4 (E.D. Pa.

---

Plaintiff has stated a plausible claim for hostile work environment sexual harassment. Plaintiff followed the statutory steps with respect to raising a sexual harassment claim based on her May 17, 2025 termination. As discussed above, the Court will only treat the pre-2024 events as background evidence, in light of Plaintiff's concession that her claims are *only* based on her termination. *See* ECF No. 10 at 4–5.

June 28, 2019).[3] Accordingly, the Court will not dismiss Plaintiff's PHRA and PFPO claims on this particular basis.

### *3. Plaintiff's Sexual Harassment Claims Are Dismissed*

Finally, the Court turns to whether Plaintiff pleaded plausible sexual harassment claims, starting by identifying which type of sexual harassment claim Plaintiff is asserting.

In her EEOC Charge, Plaintiff alleges that "Respondent's conduct created a hostile work environment," and she walks through the elements that are assessed for the hostile work environment theory of sexual harassment. *See* ECF No. 9-1 ¶¶ 49–59. There is no mention of *quid pro quo* sexual harassment, nor does Plaintiff allege the requirements for stating that claim. Similarly, in Count I of her Complaint, Plaintiff alleges that "Defendant's conduct created a hostile work environment"; then, she again discusses the elements that are assessed for the hostile work environment theory of sexual harassment. *See* ECF No. 1 ¶¶ 49–59. There is likewise no mention of the *quid pro quo* theory or the requirements for alleging that theory. Therefore, both Plaintiff's EEOC Charge and Complaint reflect that she has asserted hostile work environment sexual harassment claims.

However, despite the fact that Plaintiff asserts a hostile work environment claim in her Complaint, in her Opposition, Plaintiff appears to argue for the first time that she is instead asserting a *quid pro quo* theory of sexual harassment that is based on a tangible employment action: her May 17, 2025 termination. *See* ECF No. 10 at 4 ("The timely act is the 2025 termination, and each count rests on that timely tangible employment action."); *see also id.* at 6 (explaining that she has asserted a "tangible-action theory of sexual harassment"); *McClain*, 2021 WL 1737465, at *6

[3] Moreover, the Court is dismissing Plaintiff's Complaint without prejudice and granting Plaintiff leave to amend, so she may be filing an amended complaint after the period for exhaustion has expired in any event.

(explaining that "*quid pro quo*" sexual harassment "occurs where 'a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands'" (quoting *Ellerth*, 524 U.S. at 753)). Indeed, Plaintiff argues in her Opposition that "the motive for her firing is based on events that happened long ago, but were never forgotten." ECF No. 10 at 6; *see also id.* at 5 (arguing that "Beaufort did not seek out and destroy Plaintiff the minute he had the authority to do so. He waited until the opportunity arose."); *id.* at 6 ("Plaintiff learned that [Beaufort's] grudge never went away . . . [and] Beaufort participated in Plaintiff's termination"). Plaintiff's contentions are thus consistent with a theory that her rejection of Beaufort's advances was the basis for her termination (i.e., a *quid pro quo* theory). *See Sousa*, 2023 WL 7486751, at *4. Moreover, Plaintiff does not otherwise rebut Defendant's contention that she was not subjected to severe or pervasive discrimination anywhere in her Opposition.

"[I]t is axiomatic that [a plaintiff's] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotations and citation omitted); *see also Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 179 n.23 (3d Cir. 2021) (finding that additional claims raised by a plaintiff in opposition to an order to show cause could not be considered because the plaintiff did not raise them in the complaint). Plaintiff cannot now use her Opposition to recharacterize the hostile work environment claims that she pleaded in her Complaint as being asserted pursuant to a separate, albeit related, theory of relief that requires different factual allegations to support and different evidence to prove. Accordingly, to the extent that Plaintiff is now asserting a cause of action for *quid pro quo* sexual harassment under Title VII, the PHRA, and the PFPO, the Court will dismiss those claims without prejudice because they were not properly alleged as a cause of action in the Complaint.

Furthermore, in light of Plaintiff's arguments in her Opposition that suggest she is pursuing *quid pro quo* sexual harassment claims based on her termination, the Court finds that Plaintiff has abandoned her claims for sexual harassment based on a hostile work environment, does not reach the merits of those claims, and dismisses them. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *see also Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming a district court's refusal to consider an argument where the plaintiff "had ample opportunity to make this argument in response to defendants' motion to dismiss and failed to do so"); *York v. Lutz*, No. 22-cv-38, 2023 WL 2979536, at *2 (E.D.N.C. Apr. 17, 2023) ("consider[ing] only a *quid pro quo* sexual harassment claim" where plaintiff made it "clear in her response to the [motion to dismiss] that she has not alleged . . . a hostile work environment claim").

Plaintiff requested leave to amend her sexual harassment claims "if the Court concludes that any count requires additional detail concerning Beaufort's participation . . . or the tangible-action theory of sexual harassment." ECF No. 10 at 6. Plaintiff is granted leave to amend. The Court notes, however, that Plaintiff is permitted to rely on the pre-2024 conduct only as background evidence in support of her sexual harassment claims. *See supra* at 12–13. Based on the arguments that Plaintiff makes in her Opposition, Plaintiff appears to be taking that "background evidence" one step further, bootstrapping it, and using it as a basis for a motivating factor for her termination. In essence, Plaintiff is thus using that evidence as the basis of her claims, which is precisely what is barred by the statute of limitations.

**B. Plaintiff Failed to Plausibly Allege Her Sex-Based Discrimination Claims**

Next, Defendant moved to dismiss Plaintiff's sex discrimination claims, which she asserted under Title VII, the PHRA, and the PFPO. *See* ECF No. 9 at 13; *see also* ECF No. 1 ¶¶ 60–66,

73–78.[4] Defendant contends that Plaintiff failed to adequately plead all the elements of a *prima facie* case of sex discrimination and did not sufficiently identify similarly situated comparators to support an inference of discrimination. *See* ECF No. 9 at 13; *see also* ECF No. 11 at 4–5.

The analyses for determining whether a plaintiff pleaded plausible sex discrimination claims "under the PHRA and the PFPO . . . are 'identical' to those of Title VII[,]" so the Court's analysis of Plaintiff's Title VII claim applies to her PHRA and PFPO claims as well. *Pan*, 2026 WL 27193, at *2 n.2 (quoting *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 n.2 (3d Cir. 2009)). Under Title VII, employers are prohibited from discriminating against any employee "because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1); *see also E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448–49 (3d Cir. 2015). The PHRA and PFPO similarly prohibit employers from discriminating against an individual on the basis of sex. *See* 43 Pa. Stat. § 955(a); Phila. Code §§ 9-1101, 9-1103(1)(a).

A plaintiff may bring a Title VII claim under either a "pretext theory" or a "mixed-motive theory." *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted). At the pleading stage, a plaintiff is not obligated to choose which theory she is proceeding under. *Id.* at 791. Title VII claims proceeding under a pretext theory are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), wherein: (1) the plaintiff "bears the initial burden of establishing a *prima facie* case" of discrimination; (2) if the plaintiff demonstrates a *prima facie* case, the burden then shifts to the employer to articulate "a legitimate nondiscriminatory reason for its employment action[;]" and, finally, (3) if the employer

[4] While Plaintiff did not expressly state in Count II which statutes her sex discrimination claims are based on, the Court construes her Complaint as asserting sex discrimination claims pursuant to Title VII, the PHRA, and the PFPO. *See* ECF No. 1 ¶¶ 60–66, 73–78.

presents "such a reason, the burden shifts back to" the plaintiff to prove that the employer's cited reasons were "mere pretext for actual discrimination." *Id.* at 787 n.5.[5]

To demonstrate a *prima facie* case of sex discrimination absent direct evidence, a plaintiff needs to establish: (1) "[she] is a member of a protected class[;]" (2) "[she] was qualified for the position [she] sought to attain or retain[;]" (3) "[she] suffered an adverse employment action[;]" and (4) "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel*, 706 F.3d at 169 (internal quotations and citation omitted). Demonstrating an adverse employment action requires a plaintiff to "show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024). To survive a Rule 12(b)(6) motion, "a complaint need not establish a *prima facie* case" of discrimination to an evidentiary certainty. *Connelly*, 809 F.3d at 788; *see also Peebles v. Chain IQ Ams. Inc.*, No. 25-1419, 2026 WL 281174, at *1 (3d Cir. Feb. 3, 2026) ("[T]he judicially crafted burden-shifting framework set forth in *McDonnell Douglas Corp.* . . . is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim." (internal quotations and citations omitted)). Rather, Plaintiff's factual allegations need only "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of her sex discrimination claims. *Connelly*, 809 F.3d at 789 (internal quotations and citation omitted).

---

[5] Plaintiff alleges that Defendant's stated bases for terminating her were "pretextual." ECF No. 1 ¶ 19. At this stage, Plaintiff did not have to show pretext; "[i]t suffices for [Plaintiff] to plead facts that, construed in her favor, state a claim of discrimination that is plausible on its face." *Connelly*, 809 F.3d at 791 (internal quotations and citation omitted); *see also Real-Loomis v. Bryn Mawr Tr. Co.*, No. 20-cv-0441, 2021 WL 1907487, at *4 n.5 (E.D. Pa. May 12, 2021) ("[F]or purposes of the instant 12(b)(6) analysis, she need not establish by a preponderance of evidence that [d]efendant's purported reason for terminating [p]laintiff's employment was a pretext for discriminatory conduct." (collecting cases)).

Here, the parties do not dispute whether Plaintiff adequately alleged facts demonstrating the first, second, and third prongs of a *prima facie* case of sex discrimination. Plaintiff alleged that she is a member of a protected class as a female, that she was qualified for her position as a Correctional Officer, and that she suffered an adverse employment action when Defendant terminated her in May 2025. *See* ECF No. 1 ¶¶ 5, 40, 62–64. Defendant principally contests whether Plaintiff has pleaded enough facts to raise an inference of discrimination in connection with her termination. *See* ECF No. 9 at 13; ECF No. 11 at 4–5.

An inference of discriminatory motive can be demonstrated by various means, such as through circumstantial evidence, "comparator evidence, evidence of similar [sex] discrimination of other employees, or direct evidence of discrimination from statements or actions by [] supervisors suggesting [gendered] animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010). When an inference of discrimination is based on comparators, courts analyze whether a plaintiff has sufficiently identified "a similarly situated individual outside of the protected class, who engaged in the same conduct but was treated more favorably." *Mandel*, 706 F.3d at 170. To be "similarly situated," the comparator-employees must be comparable in "all material respects." *In re Tribune Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (internal quotations and citation omitted). Factors that courts assess include "job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004); *see also Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009) (explaining that courts may consider whether the comparators "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct" as the plaintiff (internal quotations and citation omitted)); *Fennell v. Comcast*

*Cable Commc'ns Mgmt., LLC*, 628 F. Supp. 3d 554, 573 (E.D. Pa. 2022) (listing similar factors) (collecting cases).

Applying these principles, the Court concludes that Plaintiff failed to plead sufficient facts to give rise to a plausible inference of discrimination in connection with her termination. First, Plaintiff did not allege any direct evidence of discrimination showing that there was any sex-based animus charging the decision to terminate her employment, such as discriminatory comments or remarks. *See Qin v. Vertex, Inc.*, 100 F.4th 458, 472 (3d Cir. 2024) ("Discriminatory statements constitute direct evidence of discrimination where there is evidence linking the speaker to the employer's adverse employment action."). But that is not necessarily fatal to Plaintiff's sex discrimination claims because plaintiffs are permitted to rely on circumstantial evidence. *See Golod*, 403 F. App'x at 702 n.2.

However, Plaintiff failed to allege sufficient circumstantial evidence to raise a reasonable inference of sex discrimination. With respect to comparators, the only allegation that Plaintiff made was that "[c]omparators received no, or less discipline, than Plaintiff." ECF No. 1 ¶ 42. There are otherwise no factual allegations demonstrating that Plaintiff was "similarly situated" to her alleged comparators, or that allow the Court to reasonably infer sex discrimination was the motive for her termination based on how her comparators were treated. *Cf. Shropshire v. Wheeler*, 858 F. App'x 580, 583 (3d Cir. 2021) (per curiam) (explaining that a plaintiff needs to plead "at least some factual material from which a plausible inference of discrimination can be drawn"). As Defendant points out, Plaintiff failed to provide any further factual detail about her alleged comparators, such as their gender, "names, ranks, circumstances, or outcomes." ECF No. 11 at 5.

By contrast, in *Connelly*, the plaintiff alleged more specific facts about her comparators, which allowed the Third Circuit to draw a reasonable inference of discriminatory motive. *See*

*Connelly*, 809 F.3d at 791. There, the plaintiff alleged that her previous employer recalled six male drivers, two of whom had less union seniority than plaintiff, without recalling plaintiff (a female driver), and did not employ any other female drivers. *Id.* Those allegations were enough to "raise a reasonable expectation that discovery will reveal evidence that [the plaintiff's] protected status as a woman played either a motivating or determinative factor in [the defendant's] decision not to rehire her." *Id.* Here, basic comparative facts of that nature are absent from Plaintiff's Complaint, and Plaintiff does not allege any instance where Defendant did not terminate a similarly situated male correctional officer under the same circumstances as Plaintiff. *See, e.g.*, *Golod*, 403 F. App'x at 702 (affirming the dismissal of discrimination claims where a plaintiff "did not provide any characteristics of those individuals who received the promotions to which [plaintiff] alleges she was entitled[,]" so there was no factual basis upon which the district court could infer that "the denial of [her] requests . . . was because of her Russian and/or Jewish heritage").[6]

Moreover, setting aside Plaintiff's comparators, there are otherwise insufficient facts in Plaintiff's Complaint to support a plausible inference of discrimination. *See Golod*, 403 F. App'x at 702 n.2 (explaining that, in addition to comparator evidence, an inference of discrimination can also "be supported" through "evidence of similar [sex] discrimination of other employees"). For example, Plaintiff did not plead any other instances of similar terminations of correctional officers

[6] To be sure, at the pleading stage, a plaintiff "is not required to identify any comparators who have received more favorable treatment than the plaintiff." *Sheehan v. Everstory Partners*, 815 F. Supp. 3d 357, 375 (E.D. Pa. 2025) (internal quotations and citation omitted). However, when a plaintiff is not relying on comparators, the plaintiff still must plead sufficient factual allegations to "raise a reasonable expectation that discovery will reveal evidence" of a plausible inference of discrimination. *Connelly*, 809 F.3d at 791; *see also Robinson v. Am. Reading Co.*, No. 24-cv-5608, 2025 WL 1243058, at *5 (E.D. Pa. Apr. 29, 2025) (explaining that a plaintiff "is not required to identify specific comparators at [the motion-to-dismiss] stage," but "must allege some facts that could give rise to a plausible inference of discrimination surrounding the adverse employment action"). For the reasons discussed herein, Plaintiff has failed to do so.

based on gender. Nor did Plaintiff plead any factual allegations suggesting that the altercation that she had with Beaufort in the parking lot that preceded her termination involved any discriminatory comments based on her gender. *See* ECF No. 1 ¶ 36 (alleging that Beaufort "approached [her] in a harassing and intimidating manner" and "stated that if she is handicapped, how could she perform her duties").

For these reasons, the Court finds that Plaintiff failed to plead "sufficient facts to raise a reasonable expectation that discovery will uncover proof of" a discriminatory motive for her termination. *Connelly*, 809 F.3d at 789. Accordingly, the Court will grant Defendant's Motion and dismiss Plaintiff's sex discrimination claims. Plaintiff requested leave to amend "if the Court concludes that" Plaintiff's "comparator allegations" "require[] additional detail." ECF No. 10 at 6. The Court will grant Plaintiff leave to amend those claims in the event that she can plead additional factual detail in support of them and will dismiss her sex discrimination claims without prejudice.

**C. Plaintiff Failed to Plausibly Allege Her Retaliation Claims**

Finally, Defendant moved to dismiss Plaintiff's Title VII, PHRA, and PFPO retaliation claims. *See* ECF No. 9 at 14–16; *see also* ECF No. 1 ¶¶ 67–78.[7] Defendant argues that Plaintiff failed to adequately plead causation because the internal investigation into Plaintiff's contact with Sanders was already ongoing at the time that Plaintiff filed a report with the police and the OPC. *See* ECF No. 9 at 14–15. In addition, Defendant argues that the alleged pre-2024 conduct "is an insufficient temporal nexus to establish causation[,]" and Plaintiff does not otherwise "identify any

[7] While Plaintiff did not expressly state in Count III which statutes her retaliation claims are based on, the Court construes her Complaint as asserting retaliation claims pursuant to Title VII, the PHRA, and the PFPO. *See* ECF No. 1 ¶¶ 67–78.

retaliatory statements, any specific retaliatory motive, or any nexus between [the] protected activity and [her] termination." *Id.* at 15–16.

Under Title VII, it is "unlawful for an employer to retaliate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter[.]'" *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021) (quoting 42 U.S.C. § 2000e-3(a)). The PHRA and PFPO also prohibit employers from retaliating against employees who oppose an unlawful employment practice. *See* 43 Pa. Cons. Stat. § 955(d); Phila. Code § 9-1103(1)(g). As with Plaintiff's discrimination claims, the Court interprets Plaintiff's PHRA and PFPO retaliation claims coextensively with her Title VII retaliation claim. *See, e.g.*, *Hundley v. Wawa, Inc.*, No. 21-cv-0627, 2021 WL 2555440, at *7 (E.D. Pa. June 22, 2021); *Tomaszewski v. City of Phila.*, 460 F. Supp. 3d 577, 599 (E.D. Pa. 2020).

Title VII's anti-retaliation provision does not protect individuals "from all retaliation[;]" rather, it protects "from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Where, as here, a complaint does not allege facts that indicate direct evidence of retaliation, a plaintiff's retaliation claims fall under *McDonnell Douglas Corporation*'s burden-shifting framework. *See Lynn v. Bank of New York Mellon*, 180 F.4th 133, 140 (3d Cir. 2026); *see also Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005). In order for a retaliation claim to survive a Rule 12(b)(6) motion, the plaintiff must plead facts that "raise a reasonable expectation that discovery will reveal evidence of the following elements" of her *prima facie* case: "(1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action." *Connelly*, 809 F.3d at 789; *see also Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (same).

Regarding the first element, in addition to the "formal filing of charges before the EEOC[,]" protected activity can include "informal protests of discriminatory employment practices, including making complaints to management[.]" *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (internal quotations and citation omitted); *see also Angelis v. Phila. Housing Auth.*, No. 23-cv-460, 2024 WL 5057597, at *4 (E.D. Pa. Dec. 10, 2024) (explaining that "[f]iling an internal complaint of discrimination . . . [is] deemed to be protected activity" (collecting cases)). Regarding the second element, "a plaintiff claiming retaliation under Title VII 'must show that a reasonable employee would have found the challenged action materially adverse' in that 'it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Steidle v. U.S. Liab. Ins. Co., Inc.*, 179 F.4th 193, 205 (3d Cir. 2026) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68). "[T]ermination" from employment "naturally constitute[s] an adverse employment action." *Lynn*, 180 F.4th at 144.

Regarding the third element, Title VII's "text, structure, and history" require a plaintiff making a retaliation claim to establish that her "protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *cf. Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 259 (3d Cir. 2017) (explaining that at the *prima facie* stage, a plaintiff must be able to "produce evidence sufficient to raise the inference that her protected activity was the *likely reason* for the adverse [employment] action" (internal quotations and citation omitted)). To demonstrate a sufficient causal link between the protected activity and the adverse employment action, a plaintiff generally must establish "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."

*Lynn*, 180 F.4th at 144 (internal quotations and citation omitted); *see also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007) (explaining that, in addition to temporal proximity, "[a]mong the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus"). Furthermore, "whether employment-related issues are documented prior to the protected activity" is "also relevant to the analysis" of causality. *Harrison-Harper v. Nike Inc.*, 788 F. App'x 846, 849 (3d Cir. 2019). While the Third Circuit has not imposed a "bright line rule as to what constitutes unduly suggestive temporal proximity," *LeBoon*, 503 F.3d at 233, it has found that "three months is not enough, . . . but two days is." *Harrison-Harper*, 788 F. App'x at 849 (internal citations omitted); *see also Lynn*, 180 F.4th at 144 (finding that "a thirteen-day window between protected activity and adverse action is temporally sufficient to raise a prima facie inference of causation").

In its Motion, Defendant does not dispute whether Plaintiff sufficiently pleaded the first and second elements of her retaliation claims. Plaintiff alleges that she filed a report with the police and the OPC regarding Beaufort's purportedly harassing and intimidating conduct during the February 6, 2025 incident in the parking lot. *See* ECF No. 1 ¶ 37. As discussed above, "[f]iling an internal complaint" constitutes protected activity. *See, e.g.*, *Angelis*, 2024 WL 5057597, at *4. Plaintiff further alleges that Defendant took an adverse employment action by terminating her from her position on May 17, 2025, *see* ECF No. 1 ¶¶ 5, 40–41, and Plaintiff confirmed in her Opposition that her May 2025 termination serves as the basis for her retaliation claims. *See* ECF No. 10 at 4. Here, Defendant primarily takes issue with Plaintiff's allegations regarding the third element—whether Plaintiff plausibly alleged the requisite causal connection between the filing of

her complaint with the police and the OPC, and her May 17, 2025 termination. *See* ECF No. 9 at 14–16.

Here, the Court finds that Plaintiff failed to plausibly allege sufficient facts to raise an inference of a causal nexus between her protected activity and her termination. As discussed above, Plaintiff alleges that she "reported Beaufort's harassing and intimidating conduct to the police and to [the OPC]" sometime after the February 2025 parking lot incident, but failed to specify the exact or an approximate date that she made her reports. ECF No. 1 ¶¶ 36–37. Plaintiff was not terminated from her position until May 17, 2025. *Id.* ¶ 5. In the absence of any facts indicating when Plaintiff made her reports, the Court cannot sufficiently determine whether there was "an unusually suggestive temporal proximity between the protected activity" and her termination, so Plaintiff has failed to plead plausible retaliation claims. *Lynn*, 180 F.4th at 144.[8]

Beyond temporal proximity, other facts that courts tend to look for when assessing whether a plaintiff has sufficiently pleaded causation are also deficient here. For instance, Plaintiff failed

[8] Moreover, at the time that Plaintiff allegedly reported Beaufort's conduct, Defendant had previously opened an internal investigation into Plaintiff in January 2025 regarding her contact with Sanders, which was the purported reason for her termination. ECF No. 1 ¶¶ 5, 34, 40. The alleged protected activity thus occurred *after* the investigation allegedly leading to Plaintiff's termination had already been initiated. And Plaintiff did not otherwise plead any factual allegations indicating that she had engaged in protected activity prior to the January 2025 internal investigation. Accordingly, the alleged timeline of events does not adequately raise an inference of a causal connection between Plaintiff's protected activity and her termination. Indeed, the Third Circuit has affirmed summary judgment where investigations predated the protected activity. *See, e.g.*, *Pan*, 2026 WL 27193, at *2 (finding "no causal nexus" where plaintiff's placement on a clinical remediation program "predated her later complaint"); *Russo v. Bryn Mawr Tr. Co.*, No. 22-3235, 2024 WL 3738643, at *5 (3d Cir. Aug. 9, 2024) (finding that an investigation and suspension of a plaintiff "were not retaliatory" where the defendant had already "initiated the investigation . . . two days *before* [plaintiff's] EEOC and PHRC complaints" (citing *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 196 (3d Cir. 2015))); *cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

to plead enough facts suggesting that Defendant's articulated reasons for terminating her contained "inconsistencies." *LeBoon*, 503 F.3d at 232–33. To the contrary, as discussed above, Defendant initiated an investigation into Plaintiff in January 2025 based on her contact with Sanders, which included interviewing her on January 14, 2025, and Plaintiff was allegedly terminated on that same basis. *See* ECF No. 1 ¶¶ 34, 40. In addition, Plaintiff only alleged that one hostile altercation occurred in February 2025, *see id.* ¶ 36, which does not sufficiently permit the Court to reasonably infer that she faced a "pattern of antagonism" in the lead-up to her May 2025 termination. *Lynn*, 180 F.4th at 144 (internal quotations and citation omitted). The other interactions that she had with Beaufort allegedly occurred many years prior. *See Robinson v. Se. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993) (finding that the record was indicative of a pattern of antagonism where plaintiff experienced a "constant barrage of written and verbal warnings" and plaintiff's supervisors "began a pattern of harassing [plaintiff] by repeatedly disciplining him for minor matters" (internal quotations and citation omitted)). Finally, Plaintiff did not plead adequate factual allegations demonstrating that her termination was motivated by a "retaliatory animus." *LeBoon*, 503 F.3d at 233. While Plaintiff alleges that "Beaufort participated in the decision to terminate Plaintiff for her contact with Sanders[,]" *see* ECF No. 1 ¶ 40, she does not allege that he was the only decision-maker, and she has failed to provide any other facts that allow the Court to infer that those involved in the decision were animated by a retaliatory motive.

Accordingly, the Court finds that Plaintiff failed to adequately allege a causal link between her protected activity and her termination, so she has failed to state plausible retaliation claims. The Court will grant Defendant's Motion and dismiss her retaliation claims. Plaintiff requested leave to amend if "additional detail concerning Beaufort's participation" is needed. ECF No. 10 at 6. Plaintiff's retaliation claims will be dismissed without prejudice, and the Court will give

Plaintiff another opportunity to plead those claims in the event that she can allege additional facts addressing the deficiencies that the Court has identified.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion (ECF No. 9), and dismiss Plaintiff's Complaint in its entirety without prejudice. Plaintiff is granted leave to amend her Complaint. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**